IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.               No. CR 08-52 MCA

ROBERT LEE NICK, a/k/a
Ricky E. Bunn,

   Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion in Limine* [Doc. 89] filed on June 26, 2008; the *United States' Notice of Intention to Offer Expert Testimony* [Doc. 70] filed on May 19, 2008; and the *Government's Notice of Intention to Offer Evidence Pursuant to Rule 609* [Doc. 65] filed on May 14, 2008. Having considered the parties' submissions, the applicable law, the evidence and the arguments of counsel presented at the Call of the Calendar, and being fully advised in the premises, the Court grants Defendant Robert Nick's motion in limine in part and sets the following parameters on the Government's use of expert testimony and Rule 609 evidence at trial.

## I. BACKGROUND

On January 10, 2008, the Government filed an *Indictment* [Doc. 10] charging Defendants Robert Lee Nick (a/k/a Ricky E. Bunn) and Percy D. Nick with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana (Count 1), possession

with intent to distribute 100 kilograms or more of marijuana (Count 2), and aiding and abetting. These charges arise from an incident where officials of the State of New Mexico allegedly discovered a large load of marijuana in a tractor-trailer rig during an inspection at the State's Port of Entry along Interstate 40 near Gallup, New Mexico, on or about December 23, 2007. The Court severed the trials of the two Defendants in an *Order* [Doc. 77] filed on May 28, 2008. Presently before the Court are a motion and two notices regarding the separate trial of Defendant Robert Nick, which is scheduled to commence on July 15, 2008.

## II.    ANALYSIS

### A.    Defendant's Motion in Limine

On June 26, 2008, Defendant Robert Nick filed a motion in limine [Doc. 89] seeking to exclude evidence regarding certain of his alleged aliases as well as the nature and details of his prior conviction for being a felon in possession of a firearm in 2007. In response to this motion, the Government agrees not to elicit at trial any evidence of the nature and details of Defendant Robert Nick's prior conviction for being a felon in possession of a firearm in 2007. [Doc. 91.] Instead, the evidence concerning this issue will be limited to the fact of the prior conviction and its date (2007), and such evidence may be elicited only in the event that Defendant Robert Nick elects to testify at trial. See, e.g., United States v. Serrano, No. CR 03-1735 MCA, Doc. 51 (D.N.M. unpublished memorandum opinion and order filed Feb. 9, 2004); United States v. Contreras, No. CR 05-1150 MCA, Doc. 72 (D.N.M. unpublished memorandum opinion and order filed Aug. 3, 2006).

-2-

With respect to the alleged aliases, Defendant Robert Nick concedes that evidence of his use of the name "Ricky E. Bunn" is admissible at trial, given that he used this name to identify himself to law enforcement officers at the time of his arrest.  [Doc. 89.]  "A defendant's use of an alias to conceal his identity from law enforcement officers is relevant as proof of consciousness of guilt."  United States v. Glass, 128 F.3d 1398, 1408 (10th Cir. 1997).

The relevance of Defendant Robert Nick's other alleged aliases (*i.e.*, the five other names, eight different Social Security Numbers, and eight different dates of birth retrieved from an NCIC inquiry) is less clear because the parties do not contend that this Defendant *actually used* any of these aliases to conceal his identity from law enforcement officers in the commission of the crimes charged in the *Indictment* in this case.  Evidence that Defendant Robert Nick used aliases for other purposes does not prove his consciousness of guilt with respect to the crimes charged in the *Indictment* in this case.  Cf. United States v. Barros, No. 05-2048 MCA, Doc. 102 (D.N.M. unpublished memorandum opinion and order filed Aug. 10, 2007) (noting that "consciousness of guilt" evidence must relate to the crimes which are before the jury at trial).

Insofar as the evidence of Defendant Robert Nick's other alleged aliases is derived from an NCIC inquiry, Pretrial Services Report, or other record of Defendant Robert Nick's criminal history, such evidence creates a significant danger of unfair prejudice or confusion of the issues because it is likely to become intertwined with evidence of other crimes or bad acts for which this Defendant is not on trial in this case.  Further, the Government has not

identified any witnesses whom it could call to authenticate any documentary evidence of Defendant Robert Nick's other aliases and overcome the objection that such documents are hearsay.

For these reasons, the Court concludes that with the exception of the alias allegedly used in the crimes at issue in this case (*i.e.*, Ricky Bunn), evidence of Defendant Robert Nick's aliases is not admissible during the Government's case-in-chief. This ruling is subject to reconsideration in the event that unforeseen circumstances arise at trial and does not necessarily preclude further consideration of the issue in the event that Defendant Robert Nick elects to testify at trial.

Should Defendant Robert Nick testify at trial, then the Government proposes to question him about the other aliases on the grounds that his answers would be admissions by a party opponent under Fed. R. Evid. 801(d)(2). Be that as it may, the Government still has not shown how this line of questioning would be relevant to his consciousness of guilt as to the crimes charged in the *Indictment*, and the Court is not in a position to determine whether it would be relevant for some other purpose (such as impeachment) unless and until direct examination is completed. For these reasons, the Court will defer ruling on whether the Government's counsel may elicit testimony about Defendant's other aliases during cross-examination in the event that he testifies at trial. Before asking questions concerning any other aliases besides Ricky Bunn, the Government's counsel should approach the Court outside the jury's presence, provide Defendant with an opportunity to raise objections, and request a ruling from the Court.

### B.      The Government's Notice of Expert Testimony

On May 19, 2008, the Government filed a notice of its intent to offer the following expert testimony:  (1) forensic chemist Ted L. Chapman regarding the result of the chemical testing of the seized marijuana; (2) a Drug Enforcement Administration (DEA) Special Agent regarding the estimated monetary value of the seized marijuana, whether it is a distributable amount, and the extent to which Los Angeles, California is a source area for marijuana distribution; (3) Officer James Smid regarding the standard practices and procedures of commercial trucking (such as use of log books and bills of lading) as well as the estimated cost of hauling a commercial load from California to Michigan; and (4) Senior Fingerprint Specialist Joe M. Maberry regarding fingerprint analysis of the Defendants in relation to the evidence seized in this case.  [Doc. 70.]

In response to the Government's notice, Defendant Robert Nick does not object to the proposed testimony of the forensic chemist, the DEA Special Agent, or the Senior Fingerprint Specialist.  [Doc. 90.]  Based on the materials submitted with the Government's *Notice*, the Court finds that these witnesses are qualified to offer relevant and reliable testimony for purposes of conducting the gatekeeping inquiry required under Daubert and its progeny.  The Court also notes that the parties have filed a stipulation [Doc. 100] which may obviate the need for live testimony from the forensic chemist and the fingerprint specialist.

Defendant Robert Nick objects, however, to some of the statements made by Officer James Smid in police reports that the Government disclosed to this Defendant in discovery.

In particular, this objection is founded on a concern that, because Officer Smid is also a fact witness in this case, he may be tempted to offer opinions about the credibility or mental state of Defendant Robert Nick or other persons involved in the incident at the port of entry where the marijuana allegedly was seized.  [Doc. 90.]  Counsel for the Government concedes that such opinions would be inadmissible at trial.  [Doc. 93.]

The Court agrees that the credibility of witnesses or a defendant's mental state is not a proper topic for an expert's trial testimony.  Expert witnesses may not usurp the jury's factfinding role in determining which version of events is more credible, see United States v. Adams, 271 F.3d 1236, 1245-46 (10th Cir. 2001), nor may such witnesses usurp the Court's role in instructing the jury on the applicable law, see Specht v. Jensen, 853 F.2d 805, 807-09 (10th Cir. 1988).  None of the Government's experts are permitted to expressly state the final conclusion or inference "as to whether the [D]efendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(b); United States v. Richard, 969 F.2d 849, 852 (10th Cir. 1992).  Accordingly, Officer Smid and the Government's other witnesses will be precluded from expressing an ultimate opinion about whether any Defendant knew of the presence of a controlled substance in the tractor-trailer rig at issue in this case, and whether any statements or testimony attributed to Defendant Robert Nick or any other witness are credible or believable.

But the Court's ruling on this issue "does not prevent the expert from testifying to facts or opinions from which *the jury* could conclude or infer the defendant had the requisite

mental state," Richard, 969 F.2d at 852-53 (emphasis added), so long as the expert does "not go outside his [or her] specialized knowledge by opining about Defendant's actual intent." United States v. Muldrow, 19 F.3d 1332, 1338 (10th Cir. 1994). As a fact witness, Officer Smid may certainly describe what he directly observed or heard, or the way Defendant appeared to him, during the incident that led to the seizure of the marijuana, so long as he leaves it for the jurors to decide what inferences they should draw from such perceptions or appearances.

The Court also takes judicial notice that Officer Smid has been involved in numerous seizures of controlled substances and has permitted to testify as an expert on a variety of commercial trucking practices and procedures in other cases. See, e.g., United States v. Michael, No. CR 06-1833 MCA, Doc. 119 (D.N.M. unpublished memorandum opinion and order filed Nov. 15, 2007);United States v. Webb, No. CR 05-176 WJ (D.N.M. judgment entered May 2, 2007), United States v. Davis, No. CR 04-1211 WJ, Doc. 114 (D.N.M. Oct. 29, 2004) (unpublished memorandum opinion and order denying motion to suppress); United States v. Byrdsong, No. CR 04-1465 JCH, Doc. 21 (D.N.M. Sept. 8, 2004) (exhibits consisting of Officer Smid's certification documents tendered for suppression hearing); id. Doc. 27 (D.N.M. filed Oct. 22, 2004) (unpublished memorandum opinion and order denying motion to suppress). Thus, I find that Officer Smid's training and experience, as a whole, sufficiently qualifies him to provide relevant and reliable expert testimony as to specific practices and procedures of the commercial trucking industry, such as the use of logbooks and bills of lading to document a driver's use of his time and his handling of a load, as well

as the common features of a tractor-trailer rig and how it is typically loaded with cargo.  I also find that so long as he does not offer an ultimate opinion about the commercial viability of Defendant's trucking business (which would require additional foundation and the expertise of an economist), Officer Smid is qualified to testify about the estimated cost of hauling a load from California to Michigan in December 2007, taking into account factors such as the distance and route of travel, fuel prices, miles per gallon, and maintenance issues.

All of these areas present discrete topics about which Officer Smid can provide "brief, crisp answers to the Government's questions" in order to explain the meanings of particular items of physical evidence that are "beyond the ken of the average juror."  United States v. Tapia-Ortiz, 23 F.3d 738, 740-41 (2d Cir. 1994); see United States v. Robinson, 978 F.2d 1554, 1564 (10th Cir. 1992).  Officer Smid has a reliable basis for opining about these topics because they follow a simple, well-established pattern of inductive reasoning from his many personal observations of commercial-trucking practices both as a driver and more particularly as an inspector or law enforcement officer.  These topics are also relevant to the charges in this case because they concern factors which the jury may wish to consider in deciding whether Defendant knew that he was transporting a large quantity of a controlled substance as alleged in the *Indictment*.

To the extent that the Defendant wishes the jury to draw contrary inferences from other admissible testimony which provides an innocent explanation for his activities, he is free to make that argument.  See United States v. Hubbard, 61 F.3d 1261, 1275 (7th Cir. 1995).  As with any expert opinion, Officer Smid's testimony is not binding, and the jury will

be provided with a stock instruction reminding them that they may disregard an expert opinion entirely if they should decide that it is not based upon sufficient education and experience, or if they should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence.  See id.

### C.    The Government's Notice of Rule 609 Evidence

On May 14, 2008, the Government filed a *Notice of Intention to Offer Evidence Pursuant to Rule 609* [Doc. 65] in the event that Defendant Robert Nick elects to testify at trial.  Specifically, the Government lists a jury verdict dated March 26, 1980, finding this Defendant guilty of committing an armed robbery on or about April 10, 1979, which resulted in a five-year sentence.

In response to the Government's notice, Defendant Robert Nick objects to the admissibility of this prior conviction because it is more than twenty years old and, due to its age, the remaining documentation is insufficient to ascertain more specific facts and circumstances about the basis for the conviction.   Lacking such specific facts and circumstances, the Government also has not identified any relevant similarities between the prior conviction and the present charges which would add weight to its probative value. [Doc. 92.]

The Government now concedes that Defendant's 1979 conviction is inadmissible under Fed. R. Evid. 609.  Accordingly, the evidence of Defendant Robert Nick's criminal record will be limited to the fact that he has one prior felony conviction dating from 2007, as indicated above.  If counsel believe the door has been opened for the admission of further

evidence of this Defendant's criminal history or aliases due to something he says on direct examination, counsel should promptly approach the Court and seek reconsideration of the above rulings outside the jury's presence.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendant's *Motion in Limine* in part and limits the scope of the Government's expert testimony and Rule 609 evidence in the manner set forth above.

**IT IS, THEREFORE, ORDERED** that  *Defendant's Motion in Limine* [Doc. 89] is **GRANTED IN PART** under the conditions set forth above.

**SO ORDERED** this 9th day of July, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge