## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                                 No. **CR 08-52 MCA**

**ROBERT LEE NICK**,

        Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Robert Nick's *Motion for New Trial* [Doc. 127] filed on July 24, 2008. Having reviewed the parties' submissions, the other materials of record, the relevant law, and being fully advised in the premises, the Court denies Defendant's motion for the reasons set forth below.

## I.    BACKGROUND

On July 18, 2008, a jury found Defendant Robert Nick guilty of one count of possession with intent to distribute 100 kilograms or more of marijuana, and not guilty of one count of conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, as charged in the *Indictment* [Doc. 10] filed on January 10, 2008. Before trial, the Court severed Defendant Robert Nick's trial from that of his Co-Defendant, Percy Nick, who absconded during his pretrial release and became a fugitive. [Doc. 77.] Accordingly, all future references to "the Defendant" in this *Memorandum Opinion and Order* are to Defendant Robert Nick.

Before his arrest, Defendant was driving a tractor-trailer rig that was stopped at a port of entry near Gallup, New Mexico, for a regulatory inspection which revealed a load of marijuana hidden in the rig's locked trailer.  The padlock used to lock the trailer was admitted into evidence during the trial.  [Ex. 87.]  One of the Government's witnesses, Officer Smid, testified that during his inspection of the tractor-trailer rig, he asked Defendant if he had the keys to this padlock, and Defendant responded by pulling some keys out of the ignition and using one of them to open the padlock on the trailer.  According to Officer Smid, that key was the only key to the trailer's padlock that he was aware of.  [Tr. 7-15-08; Tr. 7-16-08.]

Officer Smid also testified, however, that his involvement in the investigation ended after the marijuana was seized and turned over to the DEA, so he did not participate in any efforts to locate and obtain other keys from persons who were not present at the time the marijuana was seized.  Other Government witnesses testified about the results of the Government's post-seizure investigation, which revealed (among other things) that the tractor-trailer rig had picked up a load of celery in Oxnard, California at approximately 4:23 p.m. on December 21, 2007, and that Defendant was driving the tractor-trailer rig under a false identity ("Ricky Bunn"). [Ex. 6, 7, 11, 12, 83, 84.]

After the Government rested its case-in-chief, Defendant's counsel called two witnesses, Christopher Patrick and Yvette Santifer.  Mr. Patrick was a passenger in the tractor-trailer rig at the time of the marijuana seizure at the port of entry.  Ms. Santifer was the spouse and business partner of Defendant Robert Nick.  Before she testified, the Court appointed counsel for Ms. Santifer to advise her regarding her Fifth Amendment privilege.

2

After conferring with her appointed counsel, Ms. Santifer elected to testify. [Tr. 7-16-08.]

During their trial testimony, both Ms. Santifer and Mr. Patrick testified that there were other keys for the tractor-trailer rig that Defendant was driving at the time of the seizure. Ms. Santifer also testified that after picking up the load of celery in Oxnard, California, the tractor-trailer rig was stored for a period of time in Compton, California, while she searched for someone to drive it to Michigan, where the celery was supposed to be delivered. Ms. Santifer further stated that she did not know whether the trailer was kept locked during the time it was stored in Compton, California. When cross-examined about her efforts to locate additional keys for the trailer, Ms. Santifer testified that she had several sets of keys and that someone was "overnighting" some more keys to her, which might fit the padlock that was on the trailer at the time the marijuana was seized. Nevertheless, she did not produce such additional keys during her trial testimony. [Tr. 7-16-08.]

After Ms. Santifer concluded her testimony on the evening of July 16, 2008, the Court excused her with the consent of both parties. The Court then inquired about whether the Defendant was going to testify and whether there were any other defense witnesses. Defendant's counsel asked if he could have until the next morning to "figure that out." The Court granted Defendant's request and recessed until the next morning. [Tr. 7-16-08.]

At the beginning of the day on July 17, 2008, Defendant's counsel advised the Court that the Defendant elected not to testify and had no further witnesses to present. The defense then rested its case, without requesting a continuance or seeking to recall Ms. Santifer for the purpose of inquiring about the "overnighted" keys that she mentioned in her testimony the previous day. [Tr. 7-17-08.] The Government offered no rebuttal witnesses.

3

The Court then asked counsel whether they had other matters to bring to the Court's attention at that time.   Hearing none, the Court proceeded to confer with counsel outside the jury's presence regarding the jury instructions.   After the jury instructions were finalized and the jury was instructed, counsel for the Government delivered his closing argument, in which he asked the jury to infer (among other things) that the key used by Defendant to unlock the trailer's padlock during Officer Smid's inspection at the port of entry was the only key to that padlock. [Tr. 7-17-08.]

After the Government's counsel delivered his closing argument, the Court took a brief recess, during which Defendant's counsel received a Federal Express envelope containing some keys. [Ex. 102.] The envelope was delivered to him in the courtroom.   Counsel tested these keys on the trailer's padlock during the break and found that one of them opened the padlock.   At a subsequent hearing outside the jury's presence, Defendant's counsel orally moved to reopen the evidence for the purpose of demonstrating to the jury that there was another key which fit the trailer's padlock.   After hearing the proffer and arguments of counsel on this issue, the Court denied Defendant's oral motion for the reasons stated on the record on the afternoon of July 17, 2008. The Court also offered to re-instruct the jury that arguments of counsel are not evidence, but both parties declined such a curative instruction. [Tr. 7-17-08.]

Defendant's counsel then delivered a closing argument in which he asked the jury to draw the contrary inference that there were other keys to the trailer's padlock and that the keys were not in Defendant's exclusive possession for the entire period in question. [Tr. 7-17-08.]   During rebuttal, the Government's counsel also noted the possibility that additional

4

keys might exist but, at the same time, pointed to other circumstantial evidence of Defendant's knowledge of the marijuana in the trailer. [Tr. 7-17-08.]   The trial concluded the following day, when the jury returned its verdict. [Tr. 7-18-08.]

On July 24, 2008, Defendant moved for a new trial.  [Doc. 127.] In his motion, Defendant asserts that he should be granted a new trial because he was denied the opportunity to present evidence concerning his receipt of the Federal Express envelope containing a second key which fit the padlock on the trailer in which the marijuana was found.  The Government opposes the Defendant's motion and asserts that the circumstances under which the second key was produced do not warrant a new trial.

## II.   <u>ANALYSIS</u>

Rule 33(a) of the Federal Rules of Criminal Procedure authorizes a district court to grant a new trial "if the interest of justice so requires."  The Tenth Circuit has stated, however, that "[a] motion for a new trial is not viewed with favor and should be granted with great caution." <u>United States v. Miller</u>, 987 F.2d 1462, 1466 (10th Cir. 1993); <u>accord</u> <u>United States v. Herrera</u>, 481 F.3d 1266, 1269-70 (10th Cir. 2007).

Under Rule 33(b), a "motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty," and a "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty or within such further time as the court sets during the 7-day period." Fed. R. Crim. P. 33(b); <u>see</u> <u>United States v. Higgins</u>, 282 F.3d 1261, 1278 (10th Cir. 2002).  Excluding intermediate Saturdays and Sundays pursuant to Fed. R. Crim. P. 45(a), Defendant's motion was timely filed within seven working days after the jury

returned its verdict.  Thus, the Court has jurisdiction to consider that motion even if it is based on evidence that is not "newly discovered."

As a general rule, the district judge who presided over the trial and is familiar with the record may decide whether to grant or deny a new trial without conducting an evidentiary hearing.  See United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003); United States v. Sutton, 767 F.2d 726, 729-30 (10th Cir. 1985); United States v. Dogskin, 265 F.3d 682, 687 (8th Cir. 2001); United States v. MMR Corp., 954 F.2d 1040, 1046 (5th Cir. 1992) (collecting cases).  There are exceptional circumstances where a deviation from this general rule may be required.  See, e.g., Miller, 987 F.2d at 1466 (recantation by the prosecution's main witness); United States v. Espinoza-Hernandez, 918 F.2d 911, 913-14 (11th Cir. 1990) (serious misconduct by a government agent); cf. United States v. Velarde, 485 F.3d 553, 560-63 (10th Cir. 2007) (allowing for discovery in "rare cases" where further investigation under court's subpoena power will very likely lead to facts which are material because they could be used to impeach the witness whose uncorroborated testimony provided "virtually the only evidence of" a defendant's guilt).  In order for such an exception to apply, however, "the party seeking a hearing must make 'a sufficient threshold showing that material facts [are] in doubt or dispute.'" United States v. Alicea, 205 F.3d 480, 487 (1st Cir. 2000) (quoting United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir.1990)); accord Herrera, 481 F.3d at 1271-72.

In this case, the Court is well aware of the evidence that was offered or introduced at trial.  Although the Federal Express envelope and keys that Defendant's counsel brought to the Court's attention during the break in closing arguments were not admitted into evidence

at trial, the Court marked them as an exhibit, inspected them, and gave counsel the opportunity to show the Court outside the jury's presence that one of the newly found keys opened the padlock. [Tr. 7-17-08, Ex. 102.] For purposes of considering the motion for a new trial, the Court accepts Defendant's proffer that in a new trial, there would be testimony to the effect that a relative sent this additional key to Ms. Santifer's hotel via overnight delivery, where it was retrieved by the Federal Public Defender's staff and taken to Defendant's counsel.

The Court also understands that during pretrial discovery, both parties repeatedly attempted to contact Ms. Santifer and asked her to locate any additional keys which might fit the trailer's padlock. The record reflects that the Government made diligent efforts to obtain such keys from Ms. Santifer, but did not know of their whereabouts.

Thus, an evidentiary hearing on these issues is not necessary. Because the second key was produced to the Defendant by a defense witness before the Government ever became aware of its existence, the Court also need not consider the additional factors that bear on the need for a new trial when a delay in a defendant's discovery of evidence is attributed to the Government's failure to produce exculpatory information under Brady v. Maryland, 373 U.S. 83 (1963). See United States v. Gwathney, 465 F.3d 1133, 1143-44 (10th Cir. 2006).

In their briefs, the parties instead cite the five factors to be considered in granting a motion for a new trial founded on "newly discovered evidence," namely whether

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by [Defendant's] own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

Herrera, 481 F.3d at 1270 (quoting United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997)).  Insofar as the evidence is not "newly discovered" because it was received during closing argument before the trial ended, I also consider the following factors which were previously cited in my decision to deny Defendant's oral motion to reopen the evidence after both parties rested:

> (1) the timeliness of the motion, (2) the character of the testimony, (3) the effect of granting the motion, (4) the reasonableness of the excuse for failing to present the evidence prior to resting, and (5) whether the belated receipt of the evidence would mark it with distorted importance, prejudice the other party's case, or preclude the other party from adequately addressing it.

United States v. Espinoza, 211 Fed. Appx. 795, 799 (10th Cir. 2007) (unpublished disposition citing United States v. Coward, 296 F.3d 176, 181 (3rd Cir. 2002)).

In considering these factors, I will not place the Defendant in a "Catch 22" where, as a technical matter, the evidence is discovered too early to provide the basis for moving for a new trial under Fed. R. Crim. P. 33 but too late to reopen the evidence before the case is submitted to the jury.  The fact that the evidence was "discovered" during closing argument does not automatically preclude a new trial, nor does this fact preclude the Court from considering other factors such as (1) the Defendant's diligence in seeking to uncover the new evidence before resting his case, (2) the reasonableness of his excuse for not doing so, and (3) whether the new evidence itself is so important to the defense that in light of all the other evidence it would probably produce an acquittal if a new trial were granted.

With regard to these other factors, I find no reason to question either party's diligence or reasonableness with respect to their *pretrial* efforts to obtain additional keys from Ms. Santifer.  What troubles me, however, is the reasonableness or diligence exhibited by

8

Defendant *during the trial*, when he decided to rest his case despite knowing through Ms. Santifer's trial testimony that additional keys were being sent to her via overnight delivery.

During her testimony on the evening of July 16, 2008, Ms. Santifer alerted Defendant and his counsel to this overnight delivery; she also indicated her belief that one of the keys being "overnighted" probably corresponded to the trailer's padlock which had been admitted and shown to her as a trial exhibit. [Ex. 87; Tr. 7-16-08.] Thus, in addition to presenting the jury with a potential basis for inferring that someone else besides the Defendant had a key to access the trailer in which the marijuana was found, Ms. Santifer's testimony provided Defendant and his counsel with the necessary facts on which to make a tactical decision about whether to await the arrival of her overnight delivery before resting the Defendant's case.

The Court took no action to preclude the Defendant from exploring this option. On the contrary, I asked for input from Defendant's counsel before Ms. Santifer was excused as a witness and then allowed Defendant to wait until the next day before deciding whether to testify or call additional witnesses. During this time, Defendant could have--but did not-- move for a brief continuance on the grounds that he needed to await the overnight delivery of the Federal Express envelope containing the additional keys. Instead, Defendant chose to rest his case the next morning without informing the Court of any need to obtain, or await the arrival of, the items that were "overnighted" to Ms. Santifer.

Under these circumstances, I determine that Defendant did not act with the required level of diligence in responding to Ms. Santifer's trial testimony about the overnight package, and he does not have a reasonable excuse for failing to obtain and present the contents of that

package before resting his case the next morning.  On the contrary, the more reasonable inference is that the decision to rest without this additional evidence was a tactical choice made by Defendant and his counsel after weighing the potential risks and benefits that it might entail.

For example, such a tactical choice may have been informed by a desire to avoid risking the need for further testimony from Ms. Santifer.  Such testimony could be risky for the defense because Ms. Santifer previously admitted that she had been untruthful on other occasions, and she came close to invoking her Fifth Amendment privilege during the previous day's testimony, when she asked to consult with her appointed counsel before responding to certain questions (including a question about a prior request to produce additional keys).  Understandably, a defense witness who produces a second key that could have been used to unlock a trailer containing a large amount of marijuana might be reluctant to come forward to testify truthfully about such matters.  If Ms. Santifer had elected to assert her privilege against self-incrimination when pressed on this issue, such an assertion likely would have prompted a motion to strike her testimony in its entirety.  See, e.g., United States v. Fuentez, 231 F.3d 700, 706 (10th Cir. 2000).

Defendant's tactical decision to postpone the "discovery" of the additional key until after Ms. Santifer was excused from the witness stand serves to avoid this risk by introducing the key through a safer witness such as an investigator from the Federal Public Defender's office.  In addition to "sanitizing" the key through such an alternative witness, Defendant's tactical choice to rest before its introduction allows him to keep the key for later use as an "evidentiary trump card" in a motion for a new trial or a motion to reopen the evidence.

The Tenth Circuit has determined, however, that such tactical choices do not provide grounds for obtaining a new trial under these circumstances.  Given that he was alerted to Ms. Santifer's trial testimony about an overnight package containing additional keys, the Defendant cannot simply rest his case before that package is delivered and, at the same time, hold the contents of Ms. Santifer's overnight package as an "evidentiary trump card" to be used after the close of the evidence.  See United States v. Quintanilla, 193 F.3d 1139, 1147 & n.8 (10th Cir. 1999).  Rather, the Defendant is required to exercise reasonable diligence by making arrangements to obtain the overnight package referenced in Ms. Santifer's trial testimony, and to seek a brief continuance if necessary for that purpose, *before* resting his case.  See United States v. Lavallee, 439 F.3d 670, 701 (10th Cir. 2006).

Similarly, neither a motion for a new trial nor a motion to reopen the evidence are meant to provide a mechanism for insulating defense witnesses from cross-examination or the potential invocation of their Fifth Amendment privilege by presenting new evidence in a "sanitized" form after the witness responsible for producing it has left the witness stand. See Higgins, 282 F.3d at 1277-78; United States v. Rodriguez-Marrero, 390 F.3d 1, 29-30 (1st Cir. 2004) (citing Fed. R. Evid. 804(b)(3)); cf. id. at 15 (explaining why post-trial exculpatory statements of co-conspirators are "inherently suspect").  For these reasons, I determine that Defendant did not act with reasonable diligence in waiting until after Ms. Santifer left the witness stand and after he rested his case to advise the Court of the need for reviewing the contents of Ms. Santifer's overnight package.  This factor does not weigh in favor of a new trial.

I also conclude that if the additional key to the trailer's padlock were introduced at a

new trial in the form suggested by Defendant's proffer, this additional evidence is not so novel, material, or important to the case that it would likely produce an acquittal on the charge for which the jury reached a guilty verdict in the first trial.  Rather, the second key merely adds to the evidence that the defense already presented concerning an issue that was not central to the Government's case.  See United States v. Gonzalez, 93 F.3d 311, 314-17 (7th Cir. 1996); Dogskin, 265 F.3d at 687.

As noted above, defense witnesses already testified at the first trial about the likelihood that there were other keys for the lock to the trailer.  Indeed, Ms. Santifer testified that she did not know whether the trailer was even locked during the time it was stored in Compton, California, and there was testimony that someone else's belongings (i.e., those of Percy Nick) had been placed in the trailer after it was loaded with celery in Oxnard, California.  By the time the trailer reached Officer Smid at the Gallup port-of-entry, all that the officer could say about the key to the trailer lock was that Defendant retrieved it from a ring of keys that was in the tractor-trailer rig's ignition at the time of his inspection.  Such testimony does not necessarily exclude the possibility that other persons were in possession of, or had access to, that same ring of keys since the time the celery was loaded into the trailer a few days earlier.  The jury was free to explore all of these potentially exculpatory inferences at the end of the first trial, and Defendant's counsel was free to point them out in his closing argument.  Thus, as in United States v. Perkins, 926 F.2d 1271, 1275 (1st Cir. 1991), the additional evidence proffered in Defendant's motion for a new trial is "at best, cumulative of other, more powerful evidence revealed to the defense [before trial] and used by it" to draw exculpatory inferences.

Nevertheless, the production of an additional key to the trailer lock under the conditions set forth in Defendant's post-trial proffer would not, in any sense, compel the jury to make such exculpatory inferences, nor would it render unreasonable the contrary inferences suggested by the prosecutor in his closing argument. Recognizing the possibility that other persons could have accessed the ring of keys in the tractor-trailer rig's ignition or a second key under the scenarios presented above, the Government was not relying on Defendant's possession or use of the key to the trailer lock while at the port of entry as the central piece of evidence on which to infer Defendant's knowing possession of the trailer's illegal payload. On the contrary, the Government relied on the evidence of Defendant's use of a false identity, or concealment of his true identity, as circumstantial evidence of guilty knowledge. See United States v. Glass, 128 F.3d 1398, 1408 (10th Cir. 1997). Along the same lines, the Government offered evidence of false or improper logbook entries, the unexplained irregularities in the side trip to Compton, California, and the subsequent efforts by Defendant and Ms. Santifer to conceal the existence of that trip.

For these reasons, the Defendant's trial does not fall under the "rare class of cases" like Velarde, 485 F.3d at 563, where the uncorroborated testimony of a single witness provided virtually the only evidence of a suspect's guilt. Rather, the Government here relied on several different lines of circumstantial evidence pointing to Defendant's guilt. In light of all the other circumstantial evidence concerning Defendant's knowledge that he was carrying a controlled substance in the trailer, I find that with respect to the principal issues involved in Defendant's trial, the evidence concerning the additional key does not rise to a level of materiality that would probably produce an acquittal. See Higgins, 282 F.3d at 1278.

The Defendant's motion attempts to refute these findings by pointing to the length of the jury deliberations as evidence that this was a close case in which evidence of an additional key probably would have made the difference.  What Defendant's motion papers ignore, however, is the fact that the jury had to deliberate on a conspiracy charge in addition to the charge of possessing a controlled substance with intent to distribute it. While the evidence required to reach a guilty verdict on the possession charge was relatively straightforward, the strength of the Government's case on the additional elements required to prove the conspiracy charge was understandably diminished by the Court's decision to sever the charges against the Co-Defendant who absconded and was a fugitive at the time of Defendant's trial.  This severance, and the parties' apparent reluctance to pursue further evidence of the Co-Defendant's involvement with the marijuana (either for purposes of shifting culpability or establishing a conspiracy), provide a likely explanation for the length of the jury's deliberations and the acquittal on the conspiracy charge.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, I find that Defendant has failed to make a threshold showing that an evidentiary hearing is necessary to supplement the already extensive record concerning his first trial and the discovery of an additional key.  After careful review of this record in light of the additional information supplied with the parties' motion papers, I further find that the relevant factors do not weigh in favor of granting Defendant a new trial based on the proffered evidence concerning the additional key, regardless of whether that evidence is considered "newly discovered."

**IT IS THEREFORE ORDERED** that Defendant Robert Lee Nick's *Motion for New Trial* [Doc. 127] is **DENIED**.

**SO ORDERED** this 5th day of November, 2008, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE